**John C. MITCHELL and Charles E. Mitchell, Appellants,**

v.

**VOLKSWAGENWERK, AG, a West Germany corporation, and Volkswagen of America, Inc., a New Jersey corporation, Appellees,**

v.

**Lee MOCKENHAUPT.**

No. 81–1244.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1981.

Decided Feb. 8, 1982.

Rehearing and Rehearing En Banc Denied June 8, 1982.

---

David F. Fitzgerald, argued, Roger R. Roe, Jr., Stephen J. Smith, Minneapolis, Minn., for appellants; Rider, Bennett, Egan & Arundel, Minneapolis, Minn., of counsel.

Gray, Plant, Mooty & Bennett, Richard A. Bowman, argued, Hildy B. Linehan, Minneapolis, Minn., for appellees Volkswagenwerk, AG, and Volkswagen of America, Inc.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and HUNTER,* Senior District Judge.

LAY, Chief Judge.

This is a diversity case governed by Minnesota law. The legal difficulties arise under a "second collision" case involving an automobile accident which occurred near Moorhead, Minnesota, on October 14, 1967. John and Charles Mitchell appeal from the judgment on the verdict which apportioned damages between the driver of the car and the manufacturer of the vehicle. Plaintiffs assert the apportionment of damages is speculative and inconsistent with the evidence. Plaintiffs also assert that since the paraplegic injury which Mitchell suffered was indivisible, the defendants should share in the total damages on a joint and several basis and that a new trial is warranted; alternatively, the plaintiffs urge that the verdict is inadequate and that a new trial should be awarded.

*Facts.*

At the time of the accident, John Mitchell was riding as a passenger in a 1965 Karmann Ghia manufactured and sold by Volkswagen and operated by Lee Mockenhaupt. While Mockenhaupt was driving in a southerly direction toward Moorhead, the automobile, for an unknown reason, left the highway, struck an embankment, and rolled over at least one time and possibly more. Lee Mockenhaupt remained in the vehicle and suffered only minor injuries.

John Mitchell was ejected from the vehicle after the accident, and the right front passenger door was found to be in an open position. Mitchell was discovered behind the car with his head and shoulder leaning against a fence post. He was taken to the hospital, where he was diagnosed as having a fractured dislocation of the vertebral column at the level of the second and third thoracic vertebrae and an avulsion of the nerve roots at all levels between the sixth cervical and first thoracic vertebrae. He is a paraplegic and additionally suffers from a 75–80% disability of his upper right extremity caused by the nerve root avulsion.

Although there was a factual dispute as to whether John Mitchell was ejected through the defective door, as claimed by plaintiffs, or through a back window, as urged by defendants, the jury accepted plaintiffs' evidence that John Mitchell was ejected through the door.

Both parties agreed that the upper extremity injury occurred outside the car, but there was considerable dispute as to when and how the paraplegic injury was sustained. Plaintiffs contend that this injury occurred outside the car, while defendants assert that the injury was sustained inside the vehicle during the roll over prior to John Mitchell's ejection.

The jury found that John Mitchell's total damages were $570,000 and apportioned the award as follows: $360,000 against Volkswagen and $210,000 against Mockenhaupt. Judgment was entered on the apportioned verdict, plaintiffs' motion for new trial was overruled, and this appeal followed. On appeal, Mitchell asserts the verdict was both inconsistent with the evidence and speculative because $360,000 was too high for only the arm injury, and too low for both the arm injury and the paraplegia; also, $210,000 would be too low for the paraplegia. The defendants, however, assert that the evidence on damages was contested, and that the jury had an ample basis upon which to apportion the damages Mitchell incurred.

We hold the trial court erred under Minnesota law in failing to rule that the paraplegic injury was indivisible as a matter of law and was therefore not capable of apportionment. Under these circumstances the jury should have been instructed that if it found the defective design was a substantial factor in producing the paraplegia, the manufacturer would be liable as a joint and

---

* Elmo B. Hunter, Senior District Judge, Western District of Missouri, sitting by designation.

several tortfeasor with the driver of the car. We find the apportioned verdict inconsistent with the evidence and therefore perverse. We vacate the judgment on the verdict and remand for a new trial.

*Testimony at Trial.*

The evidence regarding apportionment of the damage is, at best, of a highly speculative nature.[1] There exists conflicting opinion evidence as to whether the paraplegic injury was incurred when the car rolled over or when Mitchell was ejected from the vehicle. Generally, the testimony focused on conclusory opinions as to whether the injury occurred inside or outside the vehicle.

Dr. Olafson testified that there is an increased potential of injury with ejectment, and that the paraplegia was caused by the ejectment. Dr. Uzgiris, a consulting mechanical engineer, testified that Mitchell was thrown out because of the defective door latch at the early stages of the accident, and had he remained in the car, he would have received lesser injuries. Dr. Uzgiris also testified that there had been an increase in spinal injuries to occupants retained in the vehicle; he additionally testified, on cross-examination, regarding the frequency of ejection for Volkswagens that did and did not comply with door latch standards.

Dr. Halliday testified that based on the assumed facts of the case, Mitchell's paraplegia was due to his being ejected from the car and hitting a solid object, presumably the fence post. Based on his opinion, he testified that it is not possible to have the type of fracture sustained by Mitchell from the rolling over of the car. He did concede, however, that an unrestrained, nonejected occupant could suffer a brain stem contusion, a fracture of the thoracic spine, or a cervical spine injury leading to quadriplegia.

Dr. McElhaney, a professor of biomedical engineering at Duke University, testified that in his opinion the injury occurred outside the vehicle. He further testified that an impact with the 4 × 4 post, of the type presented here, would cause this particular injury.

Dr. McPherson, an orthopedic surgeon, and Dr. Mendelsohn, a neurosurgeon, testified that it took a relatively flat, unyielding surface to produce the broadly distributed blow to John Mitchell's shoulders and neck. In this case, in their opinion, his brachial plexus injury occurred outside the car and showed a different attitude than would have been required to produce the spinal injury. Also, Dr. McPherson testified that according to one study, injuries to occupants retained inside the car were often less severe than when those occupants were ejected.

Dr. Severy testified that there is a higher risk of injury to an occupant in a roll over accident who is unrestrained. He also testified that Lee Mockenhaupt's injuries would be less severe than Mitchell's, since Mockenhaupt would have been held in by the steering wheel, a passive restraint. Therefore, he concluded, the right front passenger is generally injured more severely than the driver.

*The Verdict: The Apportionment of Indivisible Harm.*

On the basis of the evidence, the jury could reject either the defendants' or plaintiffs' experts' testimony and find that the severe paraplegic injury was sustained either before ejectment (thus absolving the driver from being solely responsible for damages for the paraplegia) or upon ejectment (thus absolving the driver from damages for the paraplegia). The verdict reflects that the jury did neither.

If the roll over was the cause of the paraplegic injury, then it is clear that the amount of the verdict was inadequate against the driver and excessive against the manufacturer. On the other hand, if the jury reasoned that the paraplegic injury was caused by the ejectment, then it is clear that the amount of the award was excessive

---

1. For a discussion regarding expert testimony in enhancement cases, see Foland, *Enhanced Injury: Problems of Proof in "Second Collision" and "Crashworthy" Cases*, 16 Washburn Law Review 600, 616 (1977).

against the driver and inadequate against the manufacturer. It is also urged that the jury could have found that both defendants causally contributed to the whole of the injury, and the jury on that basis attempted to apportion the damages, assessing a certain proportion to the manufacturer and a certain proportion to the driver.

Plaintiffs assert that the paraplegic injury is an indivisible one, and although fault might be apportioned, as under a comparative negligence statute dealing with joint tortfeasors, under Minnesota law damages should not be divided severally where the injury is indivisible.[2] It is now established under Minnesota law, that:

> [W]here two or more persons acting independently are guilty of consecutive acts of negligence closely related in point of time, and cause damage to another under circumstances where the damage is indivisible, i.e., it is not reasonably possible to make a division of the damage caused by the separate acts of negligence, the negligent actors are jointly and severally liable.

*Mathews v. Mills*, 288 Minn. 16, 178 N.W.2d 841, 844 (1970) (quoting *Ruud v. Grimm*, 252 Iowa 1266, 1272, 110 N.W.2d 321, 324 (1961)).

*See also* Restatement (Second) of Torts § 433A, Comment i (1965). It is argued that paraplegia, like death, is incapable of division with regard to how much of the injury each defendant caused. Where the injury is indivisible, plaintiffs argue if the jury verdict reflects an attempted apportionment to the injury between the defendants, the jury would be performing an impossible and speculative task.

Relying on the recent application of the rule by the Third Circuit in *Huddell v. Levin*, 537 F.2d 726 (3d Cir. 1976), defendants contend that the Minnesota rule on apportionment of an indivisible injury is not germane to enhanced injury cases under *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968). We, of course, must decide applicable rules under governing principles of Minnesota law.

Resolution of these conflicting arguments depends on a basic understanding of applicable rules of legal causation and the burden of proof on apportionment of harm under Minnesota law. No one disputes under settled tort principles that a tortfeasor causing the original collision may be jointly and severally liable for the whole of the damage, that is, the entire verdict, even though the original collision may not have caused all of the damage. Restatement (Second) of Torts § 435 (1965). The problem arises in enhanced injury doctrine cases since the manufacturer of a defectively designed car is liable only for the injury resulting from the so-called second collision. Some of our sister circuits, in construing the *Larsen* decision and in forecasting diversity law, have determined that in second collision cases the plaintiff has the burden not only to prove that the manufacturer was the sole cause of the enhanced injury, even though it is an indivisible one, but in addition must prove what other injuries the plaintiff would probably have received in the original collision had the defect not been present.

*The Huddell Rule: Proving the Impossible.*

The seminal case for this approach was espoused in *Huddell v. Levin*, 537 F.2d 726 (3d Cir. 1976) where plaintiffs offered proof that a head restraint was defectively designed. Plaintiff's decedent struck the head restraint after being hit by another car in the rear. Plaintiff's expert testimony was that the head restraint contained a

---

**2.** Where a bone is broken it becomes ludicrous to suggest that a jury should determine how much of the bone each tortfeasor broke. An indivisible injury has been defined as one which is "incapable of any logical, reasonable, or practical division." *Chrysler Corp. v. Todorovich*, 580 P.2d 1123, 1131 (Wyo.1978). Black's Law Dictionary 914 (4th ed. 1968) defines indivisible as "not susceptible of division or apportionment; inseparable; entire." As Professor Prosser has observed: "Certain results, by their very nature, are obviously incapable of any logical, reasonable or practical division. Death is such a result, and so is a broken leg or any single wound, the destruction of a house by fire, or the sinking of a barge." W. Prosser, Handbook of Torts, § 52, at 315 (4th ed. 1971).

severe sharp edge, and that this defect proximately caused plaintiff's death. The Third Circuit in predicting New Jersey law found this proof was insufficient to make out a submissible issue to the jury in a second collision case, since the plaintiff had failed to show what injuries the plaintiff would have received in the absence of the defect. In *Huddell*, the court reasoned:

> The district court summarized the testimony: "Plaintiff's experts testified unequivocally that if the head restraint had been designed to take these principles into account, Dr. Huddell would have survived the accident." 395 F.Supp. at 75. But the record does not indicate the specific meaning of the term "survivable," and there is no testimony as to the extent of injuries, if any, which would have resulted in a survivable crash. Although Dr. Geikas testified that there was no evidence of significant injury to vital organs from the accident as it happened, this ignored the possibility that injury to those organs might have been more severe if the great forces of the collision had been more widely distributed over the head and body by an alternate head restraint design. It was not established whether the hypothetical victim of the survivable crash would have sustained no injuries, temporary injuries, permanent but insignificant injuries, extensive and permanent injuries, or, possibly, paraplegia or quadriplegia.

*Id.* at 738.

Similarly, the Second Circuit, in following such a rule, predicting New York law, observed:

> We realize that a plaintiff's burden of offering evidence of what injuries would have resulted absent the alleged defect will be heavy in some instances and perhaps impossible in others. Where it is impossible, however, the plaintiff has merely failed to establish his prima facie case, i.e., that it is more probable than not that the alleged defect aggravated or enhanced the injuries resulting from the initial collision. Moreover, in those instances in which the plaintiff cannot offer any evidence as to what would have occurred but for the alleged defect, the plaintiff has not established the fact of enhancement at all.

*Caiazzo v. Volkswagenwerk, A. G.*, 647 F.2d 241, 251 (2d Cir. 1981).

*See also Stonehocker v. General Motors Corp.*, 587 F.2d 151 (4th Cir. 1978), (applying South Carolina law); *Higginbotham v. Ford Motor Co.*, 540 F.2d 762 (5th Cir. 1976) (applying Georgia law).[3]

The primary difficulty we have with this analysis is that it forces not only the parties but the jury as well to try a hypothetical case. Liability and damage questions are difficult enough within orthodox principles of tort law without extending consideration to a case of a hypothetical victim. More realistically, the parties and juries should direct their attentions to what actually happened rather than what might have happened.

By placing the burden of proof on a plaintiff to prove that the designer was the sole cause of not only an enhanced indivisible injury, but, in addition, that he would not otherwise have received injuries absent a defect, the injured victim is relegated to an almost hopeless state of never being able to succeed against a defective designer. The public interest is little served. We write to reaffirm that *Larsen* was not intended to create a rule which requires the plaintiff to assume an impossible burden of

---

**3.** For a critical view of *Higginbotham's* application of Georgia law see Comment, *Apportionment of Damages in the Second Collision Case*, 63 Va.L.Rev. 475, 485 n.51 (1977).

The Fifth Circuit reached a contrary result in *Smith v. Fiat-Roosevelt Motors, Inc.*, 556 F.2d 728 (5th Cir. 1977) where Florida law was applied. In this case the occupant of the automobile received a back injury when the back of his seat broke following a rear-end collision. Although the plaintiff lacked competent evidence showing the alleged defect was the sole cause of his damages, the Fifth Circuit nevertheless allowed plaintiff to recover under Florida law which holds where an injury is indivisible and apportionment impossible, recovery for the entire damages will be permitted from either tortfeasor. *De la Concha v. Pinero*, 104 So.2d 25 (Fla.1958).

proving a negative fact. A rule of law which requires a plaintiff to prove what portion of indivisible harm was caused by each party and what might have happened in lieu of what did happen requires obvious speculation and proof of the impossible. This approach converts the common law rules governing principles of legal causation into a morass of confusion and uncertainty. In *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968) applying Michigan law in answering the manufacturer's concern over the possible unfair ramifications of liability for any enhanced injury, we explained:

> Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.

*Id.* at 503.

The argument is made that since the manufacturer's liability is only for the enhanced injury, without plaintiffs proving that the injury would not have occurred in the first collision, there is no proof of an enhanced injury. The difficulty with this reasoning is that where there is but a single indivisible injury (e.g., death, paraplegia) it requires plaintiffs to rely on pure speculation, since in many instances it is impossible to show which tortfeasor caused the indivisible harm. Such a rule ignores common law principles on legal causation. Our statement in *Larsen* should not be construed so as to subject a jury to a complete conjectural result. As Judge Learned Hand said over 50 years ago "But we are not ... justified, where certainty is impossible, in insisting upon it." [4]

In construing our statement in *Larsen*, we must, of course, adhere to principles of legal causation under Minnesota law. Professor Prosser cites *Anderson v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 146 Minn. 430, 179 N.W. 45 (1920) as the leading case in Minnesota for establishing the principle of legal cause where an indivisible injury follows the consecutive wrong of two tortfeasors. He writes:

> If two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed. In such cases it is quite clear that each cause has in fact played so important a part in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all.

W. Prosser, Handbook of Torts § 41, at 243 (4th ed. 1971).

Prosser then refers to the *Anderson* case and says:

> It was in a case of this type that the Minnesota court applied a broader rule, which has found general acceptance: The defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about. Whether it was such a substantial factor is for the jury to determine, unless the issue is so clear that reasonable men could not differ. It has been considered that "substantial factor" is a phrase sufficiently intelligible to the layman to furnish an adequate guide in instructions to the jury, and that it is neither possible nor desirable to reduce it to any lower terms. As applied to the fact of causation alone, no better test has been devised.

*Id.* at 244.

*See also Flom v. Flom*, 291 N.W.2d 914 (Minn.1980); *DeCourcy v. Trustees of Westminster Presby. Church, Inc.*, 270 Minn. 560, 134 N.W.2d 326 (1965); *Doerner v. English*, 221 Minn. 398, 22 N.W.2d 217 (1946); *Johnson v. Evanski*, 221 Minn. 323, 22 N.W.2d

---

4. *Zinnel v. United States Shipping Board Emergency Fleet Corp.*, 10 F.2d 47, 49 (2d Cir. 1925).

213 (1946); *Peterson v. Fulton,* 192 Minn. 360, 256 N.W. 901 (1934).[5]

▮ Thus we conclude that under Minnesota law the plaintiffs' burden of proof should be deemed satisfied against the manufacturer if it is shown that the design defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision. Furthermore, the extent of the manufacturer's liability depends upon whether or not the injuries involved are divisible such that the injuries can be clearly separated and attributed either to the manufacturer or the original tortfeasor. If the manufacturer's negligence is found to be a substantial factor in causing an indivisible injury such as paraplegia, death, etc., then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants should be treated as joint and several tortfeasors. *Mathews v. Mills,* 288 Minn. 16, 178 N.W.2d 841 (1970).

▮ In *Huddell,* the court suggests that chain collisions and concurrent negligence principles do not control a situation where the second actor is liable only for enhanced injuries. This reasoning is difficult to follow. Under established tort principles even though two or more tortfeasors act consecutively but independently, they still may be only severally liable if it can be shown that there exists a clearly separable harm so that a reasonable division of damage can be made. This is the rule previously set forth as adopted by the Minnesota court in *Mathews v. Mills,* 178 N.W.2d 841.[6]

In *Fox v. Ford Motor Co.,* 575 F.2d 774 (10th Cir. 1978), the Tenth Circuit rejected the rationale of *Huddell* in enhanced injury cases in failing to follow orthodox tort rules on causation. Judge Doyle wrote a succinct and well-reasoned response:

Generally this duty to prove so-called enhanced damages is simply a part of the plaintiff's responsibility to prove proximate cause, that is, that the defendant in such a case is liable only for those damages which are within the orbit of risk created by him, but Ford would have us say that the plaintiffs were required to prove with specificity the injuries which flowed specifically from its deficiencies.

The case which is relied on by Ford to illustrate its position is *Huddell v. Levin,* 537 F.2d 726 (3d Cir. 1976) .... It refused to follow the orthodox doctrines of joint liability of concurrent tort-feasors for injuries which flow from their concurring in one impact.

We fail to see any difference between this type of case and the other case in which two parties, one passive, the other active, cooperate in the production of an injury. Each one's contribution in a causal sense must be established. *Damages may be apportioned between the two causes if there are distinct harms or a reasonable basis for determining the causes of injury.* Restatement of Torts, Second, § 433A.

But death is a different matter. It is not a divisible injury in which apportionment is either appropriate or possible. *See Restatement, supra,* § 433A, com-

---

**5.** Under 4 Minnesota Practice Jury Instructions Guide § 140 G–S (2d ed. 1974) direct cause is defined as: "[a] cause which has a substantial part in bringing about the (harm) (accident) (injury) (collision) (occurrence) [either immediately or through happenings which follow one after another]." This definition of legal cause may not be applicable where there exists evidence of an intervening or superseding cause. *Id.*

**6.** The Minnesota court relies on 1 T. Shearmon & A. Redfield, The Law of Negligence § 122, at 315 (6th ed. 1913) which states:

Concurrent, as distinguished from joint negligence, arises where the injury is proxi-

mately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or co-operates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is *clearly separable,* permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial.

*Id.* at 317–18 (emphasis added).

*See also* 1 F. Harper & F. James, Joint Tortfeasors, § 10, at 708–09, nn.90–95 (1956). Restatement (Second) of Torts § 433A (1965).

ment i; Prosser, *Law of Torts* 315 (4th ed. 1971).

*Id.* at 787 (emphasis added).

*See also Smith v. Fiat-Roosevelt Motors, Inc.*, 556 F.2d 728 (5th Cir. 1977); *Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir. 1974); *Horn v. General Motors Corp.*, 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976); *Loui v. Oakley*, 50 Hawaii 260, 438 P.2d 393 (1968); *Arbet v. Gussarson*, 66 Wis.2d 551, 225 N.W.2d 431 (1975); *Chrysler Corp. v. Todorovich*, 580 P.2d 1123 (Wyo. 1978).

■ Although *Larsen* was viewed by the *Huddell* court as requiring fresh legal thinking, we do not view it as a deviation from orthodox tort principles. Contrary to the concerns of the defendants in *Larsen*, no manufacturer of a vehicle has any duty to design an accident proof or foolproof vehicle. The *Larsen* decision is based on the landmark decision of *McPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916) and its progeny, recognizing the liability of a vehicle manufacturer whose automobile is sold in a defective condition, unreasonably dangerous to the user or consumer.[7] The basic product liability law that a manufacturer must anticipate not only foreseeable use but foreseeable misuse had its roots in the law long before *Larsen*. *See* 2 F. Harper & F. James, Law of Torts § 28.4, at 1541 (1956).

Similarly, the concept of apportionment of damages for enhanced injuries considered in *Larsen* was nothing new in the evolving considerations of legal cause.[8] It has long been held that an original tortfeasor may be liable for the harm which he has himself inflicted and also for the additional damages resulting from the negligent treatment by a physician. *See generally Christianson v. Chicago St. P. M. & O. Ry Co.*, 67 Minn. 94, 69 N.W. 640, 641 (1896); *Gertz v. Campbell*, 55 Ill.2d 84, 302 N.E.2d 40 (1973). Yet the physician who played no part in causing the original injury is liable only for the injury resulting from his negligent treatment. However, where wrongdoers each play a substantial role in creating an indivisible harm, they are treated as joint and several tortfeasors.[9]

We conclude the rationale of *Huddell*, at least when related to second injury collision cases involving an indivisible injury, will

7. For example, in 1959 this court in *Ford Motor v. Zahn*, 265 F.2d 729 (8th Cir. 1959) applying Minnesota law, recognized the liability of the manufacturer of the vehicle for design negligence of a sharp, protruding ash tray. The plaintiff was thrown into the dashboard when the driver hit the brakes to avoid a collision with another vehicle. We applied established rules of negligence and proximate cause. On causation principles there is little difference between *Larsen* and *Zahn*.

8. The Restatement (Second) of Torts § 433A (1965) contains many illustrations of the common law, for example:

1. A slips on the negligently maintained platform of the B Railroad, and falls and breaks his right leg. A month later, while A is still on crutches, he is riding on the bus of C Company. The bus is negligently operated and collides with another vehicle, and A is thrown to the floor and his left leg is broken. B Company and C Company are each subject to several liability for the damages resulting from the fracture of one leg only.

2. An automobile negligently driven by A strikes B, fractures his skull, and leaves him lying unconscious in the highway. Shortly afterward an automobile negligently driven by C runs over B and breaks his leg. A is subject to liability to B for the damages resulting from both fractures, but C is subject to liability only for the damages resulting from the broken leg.

9. *Cf. Gilson v. Mitchell*, 131 Ga.App. 321, 326–27, 205 S.E.2d 421, 424 (1974), *aff'd Mitchell v. Gilson*, 233 Ga. 453, 211 S.E.2d 744 (1975) where married plaintiffs alleged that three doctors caused the husband to be subjected unnecessarily to mental distress and surgical procedures. One of the doctors, without informing anyone of the experimental nature of his treatment, inserted an abnormally short catheter into the plaintiff-husband and subsequently failed to monitor the patient's progress. The other two doctors later observed the visible portion of the catheter and, without verifying the nature of the treatment with the first doctor, subjected the plaintiff-husband to painful and expensive procedures in an attempt to locate what they assumed to be the "missing" part of a regular length catheter. The Georgia court held that responsibility for the plaintiffs' alleged injury could not be apportioned on the basis of these facts, and that the plaintiffs therefore were entitled to hold all three doctors under a joint tortfeasors theory.

generally result in complete exoneration of the negligent manufacturer. The novel approach of *Huddell* applied singularly to enhanced injury cases effectively erodes the reasoning which this court enunciated in *Larsen* and contrary to the expressed concern of this court, leaves an injured victim as little more than a traffic statistic.[10] *Larsen v. General Motors Corp.*, 391 F.2d at 503. The *Huddell* rule "flagrantly" violates "the fault principle and the objective of compensation." *Cf.* 2 F. Harper & F. James, Law of Torts § 20.2, at 116 (1956). *The Burden of Proof of Apportionment.*

■ Minnesota law would also reject the *Huddell* rule which places the burden of proof of apportionment on the injured victim. In *Mathews v. Mills*, 288 Minn. 16, 178 N.W.2d 841 (1970), plaintiff's auto ran into another vehicle at an intersection and then in turn was struck from behind by another auto. As we earlier indicated, the Minnesota court held that where two or more persons act independently and are guilty of *consecutive* acts of negligence closely related in point of time, and where it is not reasonably possible to make an *apportionment of the damage* by the separate acts of negligence, the actors must be treated as jointly and severally liable.

Thereafter, the court in *Mills* placed the burden of proof of apportionment on the defendant. The court adopted the rule stated in Restatement (Second) Torts § 433 B(2) as governing in this regard.[11] 178 N.W.2d at 844–45. The Minnesota Supreme Court in *Mills* then explained:

10. *Huddell* states that if the plaintiff cannot prove the impossible (e.g. apportioning death) he does not go away penniless since the original tortfeasor is still liable for the whole of the harm. Under this reasoning the greater wrongdoer may often escape responsibility. In addition, this ignores the financial responsibility problems the injured victim faces from receiving just compensation for serious injuries from an individual driver as compared to the manufacturer's ability to make recompense for the injury it helped cause.

11. Restatement (Second) of Torts § 433B (1965) provides:
(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious

This placement of the burden of proof is justified by considerations of fairness. If we were to impose upon an injured party the necessity of proving which impact in a chain collision did which harm, we would actually be expressing a judicial policy that it is better that a plaintiff, injured through no fault of his own, take nothing, than that a wrongdoer pay more than his theoretical share of the damages arising out of a situation which his wrong has helped to create. In other words, the rule is a result of a choice made as to where a loss due to failure of proof shall fall—on an innocent plaintiff or on defendants who are clearly proved to have been at fault. See, *Maddux v. Donaldson*, [362 Mich. 425, 108 N.W.2d 33] *supra*; *Copley v. Putter* [93 Cal.App.2d 453, 207 P.2d 876] *supra*; Prosser, Torts (3d ed.) § 42; Restatement, Torts (2d) § 433 B, Comment on Subsection (2). *Id.* 178 N.W.2d at 845.

The Minnesota court found that in each case it is the function of the trial court to determine whether such burden has been met.

Having decided that the burden of establishing that the injuries in a multiple-accident situation are capable of apportionment rests upon the defendants so claiming, we further hold that it is the function of the trial court to determine whether such burden has been met. *Whether or not the harm to the plaintiff is capable of apportionment among two or more causes is a question of law.* Once

conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.
(2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.
(3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

the trial court determines that the harm is capable of apportionment, the question of actual apportionment of damages among several causes becomes one of fact to be determined by the jury. See, Restatement, Torts (2d) § 434(1)(b), and comment d.[12]

*Id.*

*See also Ruberg v. Skelly Oil Co.*, 297 N.W.2d 746 (Minn.1980).

*Conclusion.*

 In the present case the trial court did not initially rule whether the damages were capable of apportionment. Without instructions on the burden of proof as to apportionment, the court simply submitted the special verdict along with instructions on apportionment to the jury. We deem the failure of the trial court to decide whether the damages could be reasonably apportioned under Minnesota law to be plain error. *Mathews v. Mills*, 178 N.W.2d 841. Defendants complain that plaintiffs did not request specific instructions relating to joint and several tortfeasors. Although defendants' complaint is accurate, plaintiffs' omission is readily understandable because until the court rules that the injury is incapable of apportionment, such instructions would not be germane under Minnesota law. The duty to make the determination on apportionment is a judicial responsibility. *Mathews v. Mills*, 178 N.W.2d 841. If the court fails to do so when dealing with an indivisible injury, the jury must speculate about how to apportion an injury that is not capable of apportionment. Under the circumstances we deem this failure to be plain error affecting the integrity of the trial and the verdict.

 We therefore, at least on the present record, find the apportioned verdict perverse. The apportioned amounts of the verdict are totally inconsistent with the evidence.

The jury returned the special verdict finding that the driver of the automobile was causally negligent in producing John Mitchell's injuries. It also found that Volkswagenwerk was negligent in respect to Mitchell's ejection, and that the ejection was a direct cause of his injuries which were greater or more severe than he otherwise would have sustained in the accident. Both parties agree that the arm injury was caused solely by the ejection. However, the special verdict provides us with no way of knowing whether the jury found the negligence of the manufacturer was a substantial factor in producing the paraplegia or whether it simply caused the arm injury. Under the circumstances, we find that a new trial is warranted.

 The district court under Minnesota law should have ruled as a matter of law that the paraplegic injury was an indivisible one and that the harm could not be apportioned. The jury should have been instructed that if it found that the negligence of the driver of the automobile was the sole, proximate cause in producing the paraplegic injury, then the damages to be awarded for the paraplegia were to be assessed against the driver alone. On the other hand, under the existing evidence, the jury should also have been instructed that if it found that the negligent design of the manufacturer was a substantial factor in producing the paraplegic injury, then the manufacturer and the driver of the automo-

---

**12.** Restatement (Second) of Torts § 434 (1965) provides:

(1) It is the function of the court to determine

(a) whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff;

(b) whether the harm to the plaintiff is capable of apportionment among two or more causes; and

(c) the questions of causation and apportionment, in any case in which the jury may not reasonably differ.

(2) It is the function of the jury to determine, in any case in which it may reasonably differ on the issue,

(a) whether the defendant's conduct has been a substantial factor in causing the harm to the plaintiff, and

(b) the apportionment of the harm to two or more causes.

bile would be jointly and severally liable for damages that the jury finds would fairly and reasonably compensate plaintiff for the paraplegic injury. The jury should also determine the amount of compensation to be awarded to the plaintiff for his arm injury which the evidence shows was caused solely by the ejection; both the driver and the manufacturer would be jointly and severally liable for this damage.

The judgment is vacated and the cause remanded to the district court for a new trial.