837 P.2d 1143

Thomas CZARNECKI, a single man, Plaintiff–Appellant,

v.

VOLKSWAGEN OF AMERICA, a corporation; Volkswagenwerk Aktiengesellschaft, a corporation; World–Wide Volkswagen, a corporation, Defendants–Appellees.

No. 1 CA–CV 90–140.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 31, 1991.

Reconsideration Denied Feb. 28, 1992.

Review Denied Oct. 20, 1992.

Horne, Kaplan & Bistrow, P.C. by Thomas C. Horne, Phoenix, for plaintiff-appellant.

Fennemore Craig, P.C. by Linwood C. Perkins, Jr. and Timothy Berg, Phoenix, for defendants-appellees.

## OPINION

JACOBSON, Judge.

Plaintiff-appellant Thomas Czarnecki appeals from a jury verdict in favor of Volkswagen of America (VW) in his suit to recover for the paraplegia he sustained in an automobile collision. We address the following issues in this appeal:

(1) Did the trial court err in failing to instruct the jury on apportionment of damages?

(2) Did the court err in its instructions on the "misuse" defense and the definition of "reasonably foreseeable use"?

(3) Did the court err in failing to give the RAJI hindsight and consumer expectation instructions?

(4) Did the court err in its ruling on Czarnecki's motion to amend and VW's motion in limine regarding Czarnecki's alleged defect of "lack of a shoulder belt"?

## FACTS

On the evening of August 31, 1985, Czarnecki was riding in the back seat of a 1982 Volkswagen Rabbit hatchback owned and driven by Jeffrey Clark. Czarnecki's lap seat belt was fastened. Clark was driving east on Shea Boulevard in the right hand lane when he lost control. The Rabbit hit the south curb and then veered north across Shea, crossing over a median separating Shea from a parallel access road and eventually crashing into a parked van.

Clark and the front-seat passenger were not significantly injured in the collision. Czarnecki, however, suffered a flexion-compression fracture of the vertebra at the L2 level. A portion of the back end of the L2 vertebral body was forced backwards into the spinal canal, mashing the nerves and causing Czarnecki to be paralyzed.

The cause of Czarnecki's paraplegia was the primary issue at trial. Czarnecki's experts opined that there were two separate impacts. Upon the first impact between the Rabbit and the van, according to Czarnecki, he flexed over his seat belt, sustaining a neurologically benign "Chance" fracture from which he would have recovered without paralysis. However, Czarnecki also asserted that, after the first impact, a spare tire that had been left loose in the hatchback portion of the Rabbit struck the lower portion of the Rabbit's rear seat back, causing it to swing forward and strike his buttocks. Czarnecki argued that the force generated by this second impact from the allegedly defective seat back resulted in the burst fracture that intruded into the spinal canal and caused his paraplegia.

Czarnecki did not seek recovery from VW for any damages in connection with the injuries sustained during the first impact, including those resulting from his alleged Chance fracture. However, he asserted at trial that VW should be strictly liable for the paraplegia sustained in the second impact because its defective design of the Rabbit's rear seat back assembly allowed it to come loose. VW defended by arguing that Czarnecki did not suffer a Chance fracture at all; rather, VW contended that Czarnecki was thrown around the lap belt in the first impact, causing the compression, burst fracture, and resulting paraplegia. According to VW, the seat back never struck Czarnecki and thus could not have caused him any injury.

The jury returned a verdict in favor of VW. Czarnecki appeals from the verdict and from the denial of his motion for new trial.

## DISCUSSION

### A. Proposed Jury Instructions on Apportionment of Damages

The jury was instructed that:

In order to recover against Volkswagen, the *plaintiff has the burden of proving* each of the following:

(1) The rear seatback assembly of the 1982 Volkswagen Rabbit sedan was defectively designed;

(2) The defective design rendered the Volkswagen Rabbit sedan unreasonably dangerous;

(3) The design defect was a cause of plaintiff's paraplegia; and

(4) *Plaintiff's damages* were caused by the defect.

If the plaintiff fails to prove any of the preceding elements, your verdict must be for Volkswagen.

* * * * * *

If you find that the rear setback assembly of the 1982 Volkswagen Rabbit sedan was defectively designed, but that the plaintiff would have received his injuries regardless of the defect, then the defect was not a cause of the plaintiff's injuries.

If you find the defendant liable under the instructions I have given you, you must determine the damages *as the difference between what would have been suffered in the accident in the absence of a defect, and what was in fact suffered additionally as a result of the defect.*

(Emphasis added.) The jury was also instructed that Czarnecki could only recover for "enhanced" injuries—i.e., those injuries caused by a defect, not including injuries that would have resulted from the crash even if a reasonably safe rear seat back assembly design had been used. Czarnecki contends that these instructions erroneously put the burden of proof on him to prove the extent to which the product defect enhanced his damages over those that would have occurred from the crash itself. In this regard, Czarnecki argues that the trial court erred in refusing to give the follow-

ing jury instructions on burden of proof and apportionment of damages:

> If you find the defendant liable under the instructions I have given you, you must determine the damages as the difference between what would have been suffered in the accident in the absence of a defect, and what was in fact suffered additionally as a result of the defect. However, "if from the facts of this case you feel that there is no reasonable basis upon which to apportion the damage ..., then it is your duty to award plaintiff a verdict for the full amount of his damages against the defendant...."

> \* \* \* \* \* \*

> Before you can find the defendant liable, you must first find that plaintiff's injury was caused by a defect in the seat mounting of the product. A defect causes an injury if it helps produce the injury, and if the injury would not have happened without the defect. The plaintiff has the burden of proving that the defect helped produce the injury. If he does so, the defendant has the burden of proving that the injury would have happened even if there had been no defect.

Czarnecki recognizes that his proposed instructions would not have been necessary had the jury been presented with only the two theories as to the cause of his paraplegia that are discussed above. However, Czarnecki argues that VW also presented the jury with a third theory. According to Czarnecki, VW contended that, if Czarnecki did suffer a Chance fracture, it was not necessarily neurologically benign, but rather may have caused neurological damage. According to Czarnecki, if the jury believed his theory that there was a Chance fracture in the first impact followed by a compressive load from the defective seat back, but also believed a Chance fracture can cause neurological damage, the party that had the burden of proof as to apportionment of damages would lose because it would be virtually impossible to determine how much of the paraplegia was caused by the first impact and how much by the sec-

ond impact. Consequently, Czarnecki argues that his proposed instructions were necessary to put the burden of apportionment of damages on VW as called for in *Holtz v. Holder*, 101 Ariz. 247, 418 P.2d 584 (1966).

In response, VW argues that, contrary to Czarnecki's three theory scenario, only two theories were presented to the jury. VW contends that neither party suggested, and the jury therefore could not have found, that the burst fracture and paraplegia occurred partially during the first impact and partially during the second. Accordingly, VW contends that the court did not err in refusing Czarnecki's proposed instructions because the theory relevant to the instructions was unsupported by the evidence.

█ In reviewing whether the trial court should have given a requested jury instruction, the appellate court is to consider the evidence in the light most favorable to the requesting party. If there is any evidence tending to establish the theory posed in the instruction, it should be given, even if contradictory facts are presented. *Andrews v. Fry's Food Stores*, 160 Ariz. 93, 95, 770 P.2d 397, 399 (App.1989); *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 462, 733 P.2d 652, 659 (App. 1986). However, if the issue is not supported by the evidence, it is improper to instruct the jury on it. *DeElena v. Southern Pac. Co.*, 121 Ariz. 563, 569, 592 P.2d 759, 765 (1979). A trial court must give a requested instruction if (1) the evidence presented supports the instruction, (2) the instruction is proper under the law, and (3) the instruction pertains to an important issue that is not dealt with in any other instruction. *DeMontiney v. Desert Manor Convalescent Center, Inc.*, 144 Ariz. 6, 10, 695 P.2d 255, 259 (1985).

### 1. *Propriety of the Instructions*

█ In *Holtz*, the Arizona Supreme Court adopted the "single injury" rule as the correct rule to be applied in multiple collision, indivisible injury cases.[1] This

---

1. In *Holtz*, the plaintiff's automobile was first struck by defendant A and then by defendant B,

and it was impossible to determine the extent of

rule imposes joint and several liability on independent tortfeasors if the jury finds no reasonable basis upon which to apportion damages among those defendants. 101 Ariz. at 250–51, 418 P.2d at 587–88.

This case, however, is a crashworthiness case, not a multiple collision case, and there is no Arizona case that applies the single injury rule in a crashworthiness case.[2] Jurisdictions are divided on the degree and burden of proof necessary to establish damages in crashworthiness cases. Some jurisdictions follow *Huddell v. Levin*, 537 F.2d 726, 738 (3d Cir.1976), which held that under New Jersey law the burden was on the plaintiff to establish the nature and extent of enhanced injuries.[3] *See, e.g., Stonehocker v. General Motors Corp.*, 587 F.2d 151 (4th Cir.1978) (applying South Carolina law). The reasoning given for this result is that where it is impossible for a plaintiff to prove what injuries would have resulted absent the alleged defect, the plaintiff simply fails to establish his prima facie case, i.e., that it is more probable than not that the alleged defect aggravated or enhanced the injuries resulting from the first collision. *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 251 (2d Cir.1981) (applying New York law).

However, other jurisdictions have specifically rejected the *Huddell* rationale. *See, e.g., Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985) (applying Texas law); *McLeod v. American Motors Corp.*, 723 F.2d 830 (11th Cir.1984) (applying Florida law). In *Mitchell v. Volkswagenwerk AG*, 669 F.2d 1199, 1207–08 (8th Cir.1982), the Eighth Circuit reasoned that the *Hud-*

*dell* rationale as applied in a crashworthiness case involving an indivisible injury would generally result in complete exoneration of the manufacturer.[4] Responding to the argument that, because the manufacturer's liability is only for the enhanced injury, there is no proof of an enhanced injury without the plaintiff proving that the injury would not have occurred in the first collision, the court stated:

> The difficulty with this reasoning is that where there is but a single indivisible injury (e.g., death, paraplegia) it requires plaintiffs to rely on pure speculation, since in many instances it is impossible to show which tortfeasor caused the indivisible harm.

*Id.* at 1205. Because the paraplegic injury was indivisible as a matter of law and was not capable of apportionment, the Eighth Circuit held that the jury should have been instructed that the manufacturer would be liable as a joint and several tortfeasor with the driver of the car if it found the defective design was a substantial factor in producing the plaintiff's paraplegia. *Id.* at 1209–10. The *Mitchell* court based its decision, in part, on *Mathews v. Mills*, 288 Minn. 16, 178 N.W.2d 841 (1970)—a case that is significantly similar to *Holtz v. Holder*. In *Mathews*, the Minnesota Supreme Court held that, where two or more persons act independently and commit consecutive negligent acts closely related in time and where it is not reasonably possible to apportion the damages between the separate negligent acts, the tortfeasors

---

the injuries caused by each. 101 Ariz. at 248–49, 418 P.2d at 585–86.

**2.** A crashworthiness case is one in which the alleged manufacturing or design defect does not cause the accident. *Shipp v. General Motors Corp.*, 750 F.2d 418, 424 (5th Cir.1985). In such a case, the manufacturer is liable only for enhancement damages comprised of "that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." *Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir.1968).

**3.** Czarnecki contends on appeal that the trial court refused its proposed apportionment in-

structions based upon *Huddell.* VW conversely contends that the trial court in fact rejected *Huddell*, but refused the instructions because they were not supported by the evidence. It is unclear from our review of the record whether the court refused Czarnecki's proposed instructions because it accepted *Huddell* or because it found insufficient evidence to warrant the instructions. We need not belabor this matter further as it is essentially irrelevant to our disposition of this issue.

**4.** Although clearly a crashworthiness case, the Eighth Circuit referred to *Mitchell* in terms of a "second collision" case.

Q. All of your patients are spinal cord injured paraplegics?

A. They are, uh-huh.

Later that same day during argument on jury instructions, Czarnecki requested the proposed apportionment instructions, anticipating VW's argument that Chance fractures can result in neurological damage:

[CZARNECKI'S COUNSEL]: ... [I]f your honor will recall, the last time we discussed this, I indicated that if argument were to follow along the lines that your honor understood was your honor's understanding of this case, I would have no need for this instruction.

However, I had the feeling that the defendant's attorney was going to argue ... a gray area of damages, that the Chance fracture damages might be greater than what my witness says it is, which is you have the operation and you recover.

And if that's what he is going to argue, then I need this instruction....

THE COURT: [VW's counsel] is not going to argue that because there is no Chance fracture under his version of the evidence.

[VW's COUNSEL]: Under the plaintiff's there is. I don't think I should be precluded.... [T]he point is there is evidence in the record that paraplegics can happen with Chance fractures. Their own witness [Dr. Dugan] this morning said he has had patients with Chance fractures, and all of his patients are paraplegics. So somehow it doesn't seem right to me that I should be precluded from suggesting that.—

In his closing argument in connection with counsel's reference to various medical articles relied upon by Czarnecki, VW's counsel in fact argued the precise point Czarnecki had anticipated:

... I'm not sure what all of the articles were supposed to prove.

If it was to prove that ordinarily in the typical situation a Chance fracture does

not result in paraplegia, we don't dispute that. As Dr. Mackay and Dr. Mendelsohn testified, in most cases a Chance fracture will not result in any spinal cord damage.

But if in the typical situation with a Chance fracture there is no spinal cord damage, by definition, a typical situation also has nontypical situations which can and do occur.

You remember when Dr. Dugan was testifying, I asked him whether in the past he had had patients that had suffered spinal fractures, Chance fractures is what I asked him. And he testified that in the past he has had people as his patients who have had Chance fractures. All of his patients are paraplegics, or even worse, quadriplegics. You can't read articles and say that a Chance fracture does not result and never results in paraplegia.

Although it clearly was not its primary theory of the case, VW did introduce evidence and did argue from that evidence that Chance fractures can result in paraplegia. If the jury accepted both Czarnecki's theory that he suffered a Chance fracture followed by a compressive load from the defective seat back and VW's theory that a Chance fracture can cause neurological damage, Czarnecki's paraplegia would no longer be divisible.

In this regard, however, VW argues that any error in the court's failure to give Czarnecki's proposed apportionment instructions is harmless because, under the instructions given, Czarnecki was entitled to recover if the defective design was *any* cause of Czarnecki's paraplegia.[5] We agree with Czarnecki that this argument misses the point. The instruction given provided that Czarnecki would satisfy his burden of proof if the design defect was "a" cause of his paraplegia. Although he would be entitled to recover even if the jury accepted both his theory and VW's second theory because the defective seat back would be "a" cause of his paraplegia,

---

5. As VW points out, many cases relied upon by Czarnecki to support his apportionment instructions require that the plaintiff show the defect was a *substantial* cause of the injury, while the

instructions actually given in this case required Czarnecki to prove only that it was *a* cause of his paraplegia. *E.g., Mitchell,* 669 F.2d at 1209–10.

he would nevertheless be unable to prove the degree to which the second impact enhanced his damages over those caused by the first impact. Consequently, Czarnecki's proposed instructions would be necessary to place the burden of apportionment of damages on VW as called for in *Holtz*.

**B. Instructions on Misuse** [6]

■ Although contributory negligence is not a defense in a product liability case, misuse as articulated in A.R.S. § 12–683(3) is a defense because it "focuses on whether the use of the product was reasonably foreseeable." *Gosewisch v. American Honda Motor Co.*, 153 Ariz. 400, 407, 737 P.2d 376, 383 (1987). A.R.S. § 12–683(3) provides:

> The proximate cause of the incident giving rise to the action was a use or consumption of the product which was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable or was contrary to any express and adequate instructions or warnings appearing on or attached to the product or on its original container or wrapping, if the injured person knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings.

In connection with VW's misuse defense, the trial court gave the following instruction:

> Defendant contends that the defense of misuse is applicable. Defendant has the burden of proving this defense.

If you find that:

> (1) The product was used for a purpose, in a manner, or in an activity not reasonably foreseeable by defendant; and

> (2) The *only* cause of plaintiff's injury was such misuse of the product;

then your verdict must be for the defendant.

Czarnecki does not contend that the court erred in giving this instruction, which by itself is a correct statement of the defense as approved in *Gosewisch*.[7] Czarnecki contends the error arises in giving this instruction in connection with the following definition of "reasonably foreseeable use," taken virtually verbatim from A.R.S. § 12–681(4):

> The term "reasonably foreseeable use" means use of the product which would be expected of an ordinary and prudent user and which an ordinary and prudent manufacturer should have anticipated.

Czarnecki argues that this instruction, when read in connection with the misuse instruction, precluded his recovery if the jury found the use of the product was a negligent one, even though such use was reasonably foreseeable by VW. Such instructions, Czarnecki contends, contravene *Gosewisch*'s holding that recovery is not barred by the misuse defense "if the plaintiff uses the product in a foreseeable manner, regardless of whether such use was negligent." 153 Ariz. at 407, 737 P.2d at 383.[8]

---

6. In the interest of judicial economy, we address certain other issues raised on appeal despite our remand on the apportionment issue because they may reoccur on a retrial. We do not reach any alleged error dealing with Czarnecki's requested curative instruction, the refusal to permit a witness to testify or admit his opinion into evidence, or the failure to dismiss a juror for cause.

7. Although upholding the misuse defense articulated in A.R.S. § 12–683(3), the *Gosewisch* court nevertheless found the misuse instruction given was erroneous because it failed to convey that the misuse must be the only proximate cause of the injury. 153 Ariz. at 407, 737 P.2d at 383.

8. With regard to the misuse instruction itself, Czarnecki also briefly argues that this case does not involve the type of misuse contemplated by

A.R.S. § 12–683(3). We agree with VW that Czarnecki waived this issue by failing to argue it below. Although Czarnecki objected to the misuse instruction, his objection was solely on the basis that it erroneously introduced contributory negligence as a defense in the case because of the definitional instruction on "reasonably foreseeable use." Czarnecki never argued below that the misuse defense was simply inapplicable to the facts of this case. *Cf. White v. Mitchell*, 157 Ariz. 523, 527, 759 P.2d 1327, 1331 (App. 1988) (appellant's objection to instruction on basis that evidence was insufficient to submit to jury not sufficient to argue on appeal that instruction was an incorrect statement of the law).

Initially, we note that these instructions are somewhat unclear as to the issue of which "product" they refer. "Product" is defined in an earlier instruction as the VW Rabbit. Thus, Czarnecki argues this issue on appeal in terms of Clark's negligent driving of the car. However, this issue was presented both to the trial court during argument on jury instructions and to the jury during closing argument in terms of the loose spare tire in the hatchback portion of the car, not Clark's driving. As Czarnecki's counsel explained to the jury:

> Now, you'll get an instruction on misuse, and misuse does not refer to the driving, because they are—the manufacturer is expected to anticipate there will be some negligent driving. There will be foreseeable collisions. They are supposed to protect against that, and the Court's instruction will be, do not concern yourselves with the cause of the accident.
>
> The reason you'll get an instruction on misuse is because of their claim that the spare tire should have been tied down and that a prudent owner or whoever would have tied it down, and it shouldn't have been left in that condition. . . .

Consequently, we analyze these instructions as requiring the jury to determine whether leaving a spare tire loose in the hatchback of the Rabbit was reasonably foreseeable by VW.

Under the instruction of "reasonably foreseeable use," a manufacturer need only foresee use that would be expected of an "ordinary and prudent user." Czarnecki's primary quarrel with this definition is that a jury could interpret an "ordinary and prudent user" to mean a "non-negligent user." We agree. In an ordinary negligence action, "ordinary" and "prudent" are both adjectives that have been used to describe the person against whom the conduct of one who owes a duty of care is measured. *See, e.g., Bell v. Maricopa Med. Center*, 157 Ariz. 192, 194, 755 P.2d 1180, 1182 (App.1988) (the standard imposed upon one who owes a duty of care is "that of the conduct of a reasonably prudent man under the circumstances"); *Dobbertin v. Johnson*, 95 Ariz. 356, 390 P.2d 849 (1964) (standard is that degree of care that a "reasonable" or "ordinary" person would exercise in the same situation). When the instruction defining "reasonably foreseeable use" tracks language similar to that used by courts in defining negligence, it at least suggests that VW need not have foreseen a negligent use of the product. Consequently, we believe the instruction erroneously introduced the defense of contributory negligence into VW's misuse defense. *Gosewisch; Durnin v. Karber Air Conditioning Co.*, 161 Ariz. 416, 419, 778 P.2d 1312, 1315 (App.1989) (test of propriety of offered instruction is whether the jury would be misled as to the proper rule of law).

■ VW argues, however, that any error in the instruction was harmless, not reversible, error. Although it is academic because we are remanding this case on the apportionment issue, we agree with VW that the error was harmless. The misuse instruction directed the jury to find for VW if (1) the use of the product was not reasonably foreseeable by VW, *and* (2) the *only* cause of Czarnecki's injury was such misuse. Notwithstanding any error in the definition of "reasonably foreseeable use," experts on both sides testified that it was reasonably foreseeable that a spare tire would be carried in the hatchback area. More importantly, the jury would have had to have found that the *only* cause of Czarnecki's paraplegia was the transporting of the loose tire. As discussed above in some detail, each party vigorously argued its respective theories as to the cause of Czarnecki's paraplegia, and neither party ever insinuated that the spare tire was even a remote cause, much less the only one. Given the way this case was presented, we simply do not believe that a reasonable jury would have found that carrying the loose tire was the only cause of Czarnecki's paraplegia. Hence, any error in the instruction defining "reasonably foreseeable use" would have been harmless. *McFarlin v. Hall*, 127 Ariz. 220, 225, 619 P.2d 729, 734 (1980).

## C. RAJI Product Liability: Hindsight and Consumer Expectation Instructions

■ Czarnecki argues that the trial court erred in failing to give the following hindsight and consumer expectation instructions contained in RAJI Product Liability 2B:

> A manufacturer or seller is presumed to have known at all relevant times the facts that this accident and this trial have revealed about the harmful characteristics or consequences of the product's design, whether or not the manufacturer or seller actually knew those facts. If you find that it would not be reasonable for a manufacturer or seller, with such presumed knowledge, to have put this product on the market without changing the design, then the product is defective and unreasonably dangerous because of a design defect.
>
> A product is [also] defective and unreasonably dangerous because of a design defect if it fails to perform as safely as an ordinary consumer would expect when the product is used in a reasonably foreseeable manner.

VW argues that Czarnecki waived this issue on appeal by failing to make a specific objection to the court's failure to give the instructions.

During argument on jury instructions, Czarnecki contended that the requested instructions be given because they were in RAJI 2B, which was based on *Dart v. Wiebe Manufacturing, Inc.*, 147 Ariz. 242, 709 P.2d 876 (1985), and because there were no facts in this case "to distinguish it from the case that the RAJI committee had in mind." He later reurged generally that the instructions be given, but did not argue further the basis for his request.

Rule 51(a), Arizona Rules of Civil Procedure, provides in part:

> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

By requiring that the objecting party inform the trial court of the precise nature of his objection, the court is not led into involuntary error; instead, it is given the opportunity to rule correctly, thereby contributing to "the efficient administration of justice" by reducing the need for retrials. *Michie v. Calhoun*, 85 Ariz. 270, 276, 336 P.2d 370, 374 (1959). A general objection is not sufficient under the rule. *Maxwell v. Aetna Life Ins. Co.*, 143 Ariz. 205, 212, 693 P.2d 348, 355 (App.1984). An objection on the ground that an instruction states or does not state the law is a general objection, as is an objection that the evidence supports or does not support the giving of the instruction. *Spillios v. Green*, 137 Ariz. 443, 446–47, 671 P.2d 421, 424–25 (App.1983).

Czarnecki's most specific argument below was that the instructions should be given because they were RAJI instructions. However, the drafters of RAJI 2B clearly did not intend for the consumer expectation and hindsight instructions to be given in every design defect case as a matter of course, but rather only "as supported by the evidence." Czarnecki's failure to argue the evidence that would support the giving of the instructions simply did not give the trial court an opportunity to rule correctly on this issue.[9]

■ Absent fundamental error, failure to object waives the issue of error in the instruction. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 419–20, 758 P.2d 1313, 1321–22 (1988). The doctrine of fundamental error is sparingly applied in civil cases, and only when the error "deprives a party of the right to a fair trial." *Maxwell*, 143 Ariz. at 212, 693 P.2d

---

9. In his reply brief, Czarnecki points to evidence regarding consumer expectation, ostensibly in response to VW's argument on appeal that the instructions were properly refused despite Czarnecki's waiver of the issue because neither instruction was supported by the evidence. However, Czarnecki did not argue that evidence to the trial court as a basis for giving the consumer expectation instruction. Because the trial court was not given an opportunity to rule on this issue, we reach no conclusion on appeal as to whether such evidence in fact would support the giving of the instruction.

at 355. Czarnecki does not argue that he was deprived of a fair trial by the court's failure to give the consumer expectation and hindsight instructions. Consequently, we find that Czarnecki merely made a general objection below, waiving any error on this issue on appeal.

### D. Motions Regarding Lack of a Shoulder Belt

■ Czarnecki first argues that the trial court erred in denying his motion to amend his complaint to substitute "lack of a shoulder belt" for "lack of a lap belt" in the list of alleged defects in the Rabbit involved in the accident. We will not overturn a ruling on a motion for leave to amend absent a clear abuse of discretion. *Hall v. Romero*, 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984).

■ Although Czarnecki now contends that he should have been allowed to amend his complaint to allege the lack of a shoulder belt as a design defect because VW's experts had testified in deposition that a lap-shoulder belt restraint was preferable to a lap belt only, he did not make this argument below. Rather, Czarnecki argued to the trial court that leave to amend should be freely given and that VW could not be prejudiced by the amendment because "lack of a lap belt" instead of "lack of a shoulder belt" was obviously an error from the beginning.

Initially, we disagree with Czarnecki that such an error would have been so "obvious" to VW such that it would not have been prejudiced by the amendment. At no time during the lengthy discovery period in this case did Czarnecki ever even insinuate that the lack of a shoulder belt might have caused or contributed to his paraplegia. Czarnecki's amendment asserting that the lack of a shoulder belt was a design defect would have added a new theory of liability only seven weeks before trial.

Interestingly, Czarnecki's argument that the omission of "lack of a shoulder belt" in his complaint was a mere dictating error is at odds with his argument that he did not intend to assert a design defect on this basis until VW's experts testified on this theory in deposition. However, we find no error in the court's refusal to allow the amendment even if Czarnecki did not realize he had such a cause of action until after discovery. Allowing such an amendment adding an entirely new theory of liability at that late date would have required additional research and discovery, resulting in substantial delays. Moreover, we believe allowing the amendment on this basis would merely have allowed introduction of evidence through cross-examination of VW's experts that would have been prejudicial to VW, yet not nearly sufficient to prove all of the elements of this alleged defect. Under these circumstances, we find no abuse of discretion in the court's refusal to allow Czarnecki to amend his complaint.

In this regard, Czarnecki also argues that the court erred in granting VW's motion in limine to preclude any evidence referring to an alleged defect based on the lack of shoulder belts. Having found no abuse of discretion in the court's denial of Czarnecki's motion to amend, we find no abuse in the court's refusal to admit evidence on a legal theory Czarnecki had been prohibited from alleging. *West Pinal Family Health Center, Inc. v. McBryde*, 162 Ariz. 546, 550, 785 P.2d 66, 70 (App. 1989).

### CONCLUSION

Based on the foregoing, we reverse and remand for proceedings consistent with this decision.

GERBER and FIDEL, JJ., concur.